UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Judith Tompson

     v.                          Civil No. 15-cv-293-JL
                                        Opinion No. 2018 DNH 071

State of New Hampshire


**O R D E R**

Appearing pro se, Tompson petitions for a writ of habeas
corpus, pursuant to 28 U.S.C. § 2254, challenging her state
court convictions on charges of felony and misdemeanor reckless
conduct, resisting arrest, and disobeying an officer, under N.H.
Rev. Stat. Ann. ("RSA") §§ 631:3, I & II; § 642:2; and § 265:4.
Before the court is respondent's motion for summary judgment
(Doc. No. 38).  Tompson objects (Doc. No. 41).


**Background**

In its order affirming Tompson's convictions, see State v.
Tompson, No. 2013-0449 (N.H. June 9, 2015), the New Hampshire
Supreme Court ("NHSC") described the evidence adduced at
Tompson's trial in the Rockingham County Superior Court ("RCSC")
as follows.  On November 14, 2011, Deputy Sheriff Scott Peltier
("Deputy Peltier") attempted to serve civil process on Tompson
by approaching her, while she was in her car, in the parking lot
of her condominium complex.  When Tompson saw Deputy Peltier,

she backed out of her parking space, causing him to jump back, brushed his pant leg with her car, did not heed his shouts to stop, drove through the parking lot without slowing down for its speed bumps, and drove out of the lot without stopping at the intersection at the lot's exit.  As she drove away, she reached a speed of approximately 40-45 miles per hour ("mph") in a 30 mph zone, turned right at an intersection at which the right-turn signal was red, and failed to pull over when Deputy Peltier activated his emergency lights.  Later, Tompson pulled into a parking lot.  Deputy Peltier followed her into the lot, exited his cruiser, and ordered her to turn off her engine.  Tompson then drove out of the lot, without stopping before entering the roadway.

Back out on the road, Tompson pulled into a left-turn lane and stopped at a red light.  When Deputy Peltier pulled up behind her, got out of his cruiser, and ordered her to shut off her engine, however, Tompson drove through the red light and returned to the parking lot of her condominium complex.  There, Deputy Peltier found Tompson in her car and drove up behind her. When she shifted into reverse, Deputy Peltier had to back up to avoid a collision.  Tompson backed up at a high rate of speed and then drove forward, back into her parking space.

Tompson remained in her car for a few minutes, but then got out and moved quickly toward the door of her condominium unit.

When she saw Deputy Peltier begin to pursue her, she changed
directions.  When Tompson ignored Deputy Peltier's order to
stop, he tackled her to the ground.  When she was on the ground,
she rolled around, kicked, and screamed.  The episode concluded
when Deputy Peltier, assisted by a Salem Police Department
officer, arrested Tompson.

Based upon the events described above, Tompson was
initially charged with Class B resisting arrest (a misdemeanor)
and two violation-level offenses (reckless driving and
disobeying an officer), see State v. Tompson, No. 473-2011-cr-
03831 (N.H. Cir. Ct., 10th Cir., Dist. Div.-Salem) ("Salem
District Court").  Tompson went to the Salem District Court on
December 27, 2011 for her arraignment.  Upon discovering that
the Rockingham County Sheriff's Department was not represented
in court on that date, and had failed to file the complaints
against her, she unsuccessfully moved to have the charges
against her dismissed.  See id., Dec. 27, 2011 Order (Doc. No.
1, at 54) (rescheduling arraignment).  On January 17, 2012,
Tompson filed a written motion to dismiss, which was denied on
February 7, 2012.

Tompson appeared for her trial in the Salem District Court,
without counsel, on February 14, 2012.  Deputy Peltier was not
there to testify.  The prosecutor offered Tompson a plea deal,
and told her that if she did not accept it, he would nol pros

3

the misdemeanors and seek one or more felony indictments.

Tompson rejected the plea deal, and the prosecutor nol prossed

the Class B misdemeanor and violation-level charges.  On March

9, 2012, Tompson was indicted on three counts of felony reckless

conduct,[1] and she was charged with multiple Class A misdemeanors,

including disobeying an officer and one resisting arrest charge.

See State v. Tompson, No. 218-2012-cr-00258 (N.H. Super. Ct.,

Rockingham Cnty.) ("Criminal Case").  Trial in the Criminal Case

was set for the August 13, 2012 trial period.

On March 14, 2012, Attorney Joseph Malfitani of the New

Hampshire Public Defender ("Public Defender") was appointed to

defend Tompson.  In April 2012, Attorney Malfitani drafted, but

never filed, a motion to dismiss.  In it, he argued that the

likely delay of Tompson's trial until August/September 2012 was

a presumptively prejudicial delay that would violate her federal

and state constitutional rights to a speedy trial.

At a status conference on July 19, 2012, after Tompson

raised concerns over Attorney Malfitani's representation, the

RCSC allowed the Public Defender to withdraw as Tompson's

counsel.  With respect to the consequences of the Public

---

[1]One count arose from Tompson's brushing Deputy Peltier's
pant leg with her car when she backed out of her parking space
the first time; one count related to the pursuit through the
streets; and one count arose from Tompson backing up the second
time, and forcing Deputy Peltier to back up his cruiser to avoid
a collision.

Defender's withdrawal, the following exchange took place between

Tompson and the RCSC:

> THE COURT:  Okay, Okay.  Well, I'll tell you
> what.  I think that in light of . . . the concerns
> you've outlined, I am going to allow – the Public
> Defender's Office to withdraw from this case, and
> . . . the Court will appoint court-appointed counsel.
> But I want to make sure, though, before I do that, you
> understand – because this case is set for trial in
> August, right?  August 13th a two-week session [sic].
> I think there's a very good chance that that's going
> to result in a continuance of the trial because it's
> . . . less than four weeks away.  It takes some time
> to get new counsel appointed, they obviously have to
> get the discovery in the case, they have to get up to
> speed.  And I know you have asserted both in your
> pleading and Attorney Malfitani when he was
> representing you earlier in the case . . . informed me
> that you were asserting your right to a speedy trial.
>
> So I want to make sure you understand that if I
> grant your request to have the public defender
> withdraw from the case, the likelihood is that the
> case is going to be continued in order to allow new
> counsel to get up to speed.  Do you understand that?
>
> THE DEFENDANT:  I understand, Your Honor.

July 19, 2012 Status Conf. Tr. 5:22-6:19, Criminal Case (Doc.

No. 36).

On July 23, 2012, Attorney Patrick Fleming was appointed to

represent Tompson.  She asked him to file a motion to dismiss,

on grounds that her speedy-trial rights had been violated.  He

did not do so.

In November 2012, Attorney Fleming moved to continue

Tompson's trial, and filed a signed waiver of her speedy-trial

rights.  The RCSC granted the motion, and Tompson was tried in

March 2013, before Judge McHugh. Shortly before her trial, Tompson was offered a deal that would have allowed her to avoid trial by pleading guilty to several misdemeanor charges. Against the advice of counsel, she rejected the deal.

At trial, Tompson was convicted of misdemeanor counts of resisting arrest and disobeying an officer; a lesser-included charge of misdemeanor reckless conduct (relating to when she brushed the officer's pant leg with her car); and one count of felony reckless conduct (relating to when she backed up and almost hit the officer's cruiser). Tompson was acquitted of the third count of reckless conduct.

On the date scheduled for Tompson's sentencing, Attorney Fleming moved to withdraw. The court granted the motion. At her subsequent sentencing hearing, Tompson was represented by Attorney Neal Reardon. The State recommended that the court impose the following sentences:

- <u>Felony reckless conduct</u>: a 90-day term of imprisonment in the House of Corrections ("HOC"), stand committed; probation for a year after her release from the HOC; a fine of $500 (plus a penalty assessment); a suspension of Tompson's drivers' license for 60 days after her release from the HOC; a letter of apology to Deputy Peltier; and a mental-health examination.

- <u>Misdemeanor reckless conduct</u>: a sentence identical to the sentence for felony reckless conduct, with the exception that the fine be suspended for two years upon Tompson's good behavior.

- <u>Disobeying an officer</u>: a sentence of 90 days in the HOC, consecutive to her sentence(s) for reckless conduct,

and suspended for two years from the date of Tompson's
release from her reckless—conduct sentence(s); a fine of
$500 (plus the penalty assessment); a 60-day license
suspension to run concurrently with the suspension imposed
for reckless conduct; and a letter of apology to Deputy
Peltier.

• <u>Resisting arrest</u>: a sentence identical to the sentence
for disobeying an officer, with the exception that the fine
be suspended for two years upon Tompson's good behavior.

Attorney Reardon countered with a recommendation that

Tompson receive no jail time, based upon her history of being a

good citizen, the minimal severity of her offenses, and several

different medical conditions.  In place of jail time, he

suggested home confinement with an electronic monitor.  In

addition, he argued for a low fine in light of her financial

situation, and he asserted Tompson's strong objection to having

a mental-health evaluation.  Attorney Fleming also introduced at

sentencing photographs of Tompson, taken shortly after her

arrest, that documented injuries she had received during the

course of her arrest.

For each of her two reckless-conduct convictions, the court

sentenced Tompson to a 60-day term of imprisonment, to be served

concurrently.  In all other respects, Judge McHugh imposed a

sentence in line with the prosecutor's recommendations.

Tompson filed a notice of appeal pro se.  Attorney Reardon

filed a notice of appeal on her behalf several days later,

listing fewer issues.  Tompson then filed a 159-page pro se

motion for a new trial in the RCSC, arguing that she had
received ineffective assistance of counsel. The NHSC stayed her
direct appeal while that motion was pending. See State v.
Tompson, No. 2013-0449 (N.H. Oct. 22, 2014) (order lifting
stay).

In that initial motion for a new trial, Tompson identified
multiple instances of purportedly deficient advocacy, including
the fact that neither Attorney Malfitani nor Attorney Fleming
filed a motion to dismiss on grounds that her speedy-trial
rights had been violated. Judge McHugh, who had been the trial
judge, denied Tompson's motion in a two-page order. See May 20,
2014 Order, Criminal Case, ("May 2014 RCSC Order") (Doc. No. 22-
6, at 21-22). After describing Tompson's motion as a line-by-
line annotation of her trial transcript, in which Tompson opined
why, in her view, the statements made by her attorneys and their
questions were deficient, Judge McHugh explained his decision,
as follows:

> [A]s cases are being tried we do not have the luxury
> of stopping after each statement or question asked to
> determine whether or not the statement or question
> perhaps should have been made using different words.
> When reviewing a claim for ineffective assistance of
> counsel, trial courts look at the totality of the
> proceeding to determine if any prejudice befell a
> defendant. In this case the Court has no difficulty
> in concluding, and in fact the transcript will so
> support, that each of the defendant's three appointed
> attorneys in her case worked diligently on her behalf.
> Accordingly, the defendant's Motion for New Trial Due
> to Ineffective Assistance of Counsel is denied.

Id. at 21-22.

Tompson appealed, and the NHSC declined her discretionary appeal. See State v. Tompson, No. 2014-0404 (N.H. Aug. 29, 2014). The NHSC then resumed its consideration of Tompson's direct appeal and affirmed her conviction. See State v. Tompson, No. 2013-0449 (N.H. June 9, 2015) ("Direct Appeal") (Doc. No. 1, at 20-24).

Next, Tompson filed her § 2254 petition in this court. In her petition here, Tompson has asserted that her convictions were unconstitutional because: (1) her right to a speedy trial was violated (Claim 1); (2) Deputy Peltier used excessive force when he arrested her (Claim 5); (3) Attorney Malfitani provided her with ineffective assistance in two different ways (Claim 2); (4) Attorney Fleming provided her with ineffective assistance in seven different ways (Claim 3); and (5) Attorney Reardon provided her with ineffective assistance in two different ways (Claim 4).

Respondent moved to dismiss Tompson's § 2254 petition, on grounds that she had not exhausted her speedy-trial claim by fully litigating it in the state courts. This court denied that motion to dismiss, see May 10, 2016 Order (Doc. No. 28), and then stayed this case so that Tompson could exhaust her state remedies on her speedy-trial claims in the state courts. See

May 31, 2016 Order (Doc. No. 30). Tompson exhausted her speedy trial claims by filing a motion for post-conviction relief in the Criminal Case. The RCSC denied that motion on procedural grounds, concluding that the speedy trial claim had been procedurally defaulted. See State v. Tompson, No. 218-2012-cr-00258 (N.H. Super. Ct., Rockingham Cnty., Oct. 18, 2016) ("October 2016 RCSC Order") (Doc. No. 32-2). Tompson appealed that decision. The NHSC declined her notice of appeal. See State v. Tompson, No. 2016-0693 (N.H. Jan. 27, 2017) (Doc. No. 33, at 2). Thereafter, the stay in this § 2254 petition was lifted. See Mar. 10, 2017 Order (Doc. No. 34). Respondent now moves for summary judgment (Doc. No. 38). Tompson objects (Doc. No. 41).

## Standard

A federal court may grant habeas corpus relief "only on the ground that [a person] is in custody in violation of the Constitution or laws or treaties of the United States."[2] 28 U.S.C. § 2254(a); see also Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011). Where the state courts have already addressed the merits of the petitioner's federal claims,

---

[2]While Tompson is no longer in custody, a record of having a felony conviction is presumed to have sufficient collateral consequences to allow a person in her position to petition for habeas relief. See Spencer v. Kemna, 523 U.S. 1, 8 (1998) (citing Sibron v. New York, 392 U.S. 40, 55-56 (1968)).

the standard that this court applies in considering such claims in the § 2254 proceedings is deferential to the state court's rulings:

> Federal habeas relief may not be granted . . . unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the United States Supreme] Court, § 2254(d)(1); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Harrington v. Richter, 562 U.S. 86, 100 (2011) (case citations omitted). The pertinent state court ruling in circumstances where there are multiple tiers or iterations of state court review of a federal claim is generally deemed to be the last reasoned state court decision on the issue. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015).

The deferential standard of review of state court decisions under section 2254(d) applies "even where there has been a summary denial" of the federal claim in the state courts. Cullen, 131 S. Ct. at 1402; see also Harrington, 562 U.S. at 100 (one-sentence summary denial constituted adjudication on the merits and § 2254(d) applied). If, however, a claim "has not been adjudicated on the merits in state court," it is subject to de novo review. Jaynes v. Mitchell, 824 F.3d 187, 192 (1st Cir.) (citation omitted), cert. denied, 137 S. Ct. 312 (2016).

Under the doctrine known as procedural default, a federal court [generally] "will not review a § 2254 habeas claim when the state court's decision for that claim rests on a state law ground that is independent of the federal question and adequate to support the judgment." Powell v. Tompkins, 783 F.3d 332, 344 (1st Cir. 2015). In other words, "the procedural default rule bars § 2254 habeas relief when a state court declined to address a [petitioner's] federal claims because the [petitioner] had failed to meet a state procedural requirement." Powell, 783 F.3d at 344 (internal quotation marks and citation omitted). Procedural default bars federal habeas relief only so long as the state procedural requirement "is both firmly established and regularly followed." Logan v. Gelb, 790 F.3d 65, 72 (1st Cir. 2015).

"Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground." Davila v. Davis, 137 S. Ct. 2058, 2062 (2017). To overcome that bar, a petitioner must "establish 'cause' to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error." Id. A petitioner may also overcome the bar if he can show "that a failure to review the claims on the merits would result in a 'fundamental miscarriage of justice,'" although that is "a narrow exception

to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015) (citations omitted).

"Cause for procedural default 'must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012) (citation omitted). "To show prejudice," a petitioner "must demonstrate 'not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 26 (citations omitted; emphasis in original).

## Discussion

### I. Speedy Trial (Claim 1)

In Claim 1, Tompson asserts that her convictions were obtained in violation of her federal constitutional right to a speedy trial. Tompson has claimed that her speedy-trial rights were violated on February 14, 2012 when the prosecutor nol prossed the charges against her in the Salem District Court. Tompson claims prejudice on the basis that, as a result of the prosecutor's actions, she lost the opportunity to go to trial on that date, and to have the charges against her dismissed,

because the prosecutor did not have his witness available to testify. Respondent moves for summary judgment on Tompson's speedy-trial claim, arguing that it was procedurally defaulted and, as a consequence, is not subject to review by this court. Respondent is correct.

While Tompson made multiple references in various state-court pleadings to her trial counsels' failure to file a motion to dismiss on speedy-trial grounds, she first briefed her speedy-trial claim in the state courts as an independent basis for relief in a post-conviction motion filed in the RCSC after she had filed this case. In denying that post-conviction motion in October 2016, the RCSC cited the well-established New Hampshire procedural rule that "habeas corpus is not a substitute for an appeal, and a procedural default may preclude later collateral review," October 2016 RCSC Order, slip op. at 3 (citing Avery v. Cunningham, 131 N.H. 138, 143 (1988)) (Doc. No. 32-3, at 4). On that basis, and finding that Tompson had not pursued the speedy trial claim in her prior post-conviction pleadings (including her direct appeal),[3] the RCSC ruled that Tompson had waived or forfeited her speedy-trial claim:

---

[3]Tompson's pro se notice of appeal of her criminal conviction lists a speedy trial claim as an issue, but the notice of appeal filed by Attorney Reardon on her behalf omits that issue. See R.7 Notices of Mandatory App., Doc. No. 36. None of the briefs filed in Tompson's direct appeal present any argument regarding Tompson's right to a speedy trial. See

14

A careful review of the defendant's current motion
indicates that both the alleged prosecutorial misconduct
and the alleged defects by her defense counsel were known
to her throughout the process. Indeed the factual
predicates for her current claim were presented to the
Court on March 22, 2013 . . . .

. . . .

The defendant has simply repackaged her prior complaints in
a new motion. Thus, the current speedy trial claims are
procedurally barred. There must be some finality to the
courts' decisions. See Avery, 131 N.H. at 143-44.
[Tompson] has presented no persuasive reason why she could
not have raised the speedy trial claims she is now pursuing
during the prior litigation.

October 2016 RCSC Order, slip op. at 5, 6 (Doc. No. 32-3, at 6,

7). The NHSC declined to accept a discretionary appeal of that

order. See State v. Tompson, No. 2016-0693 (N.H. Jan. 27, 2017)

(Doc. No. 33, at 2). The October 2016 RCSC Order finding that

the speedy trial claim was procedurally defaulted is both the

first and last-reasoned state decision on that issue, and it

places the matter beyond this court's review. See Brumfield,

135 S. Ct. at 2276; Powell, 783 F.3d at 344.

Tompson seeks to invoke the "cause and prejudice" exception

to the procedural default bar. The cause she identifies is the

ineffective assistance provided by her first two trial

attorneys, specifically, their failure to file a motion to

Briefs, Direct Appeal (Doc. No. 36). In New Hampshire, the
failure to brief a claim on appeal constitutes a waiver of the
claim. See State v. Blackmer, 149 N.H. 47, 49 (2003); State v.
Berry, 148 N.H. 88, 93 (2002).

dismiss on speedy-trial grounds, which she asserts precluded appellate counsel from briefing the issue on appeal.  Tompson's argument is unavailing.

"Deficiency by counsel rising to the level of constitutionally ineffective assistance under Strickland [v. Washington, 466 U.S. 668 (1984)] can serve as cause to excuse the procedural default of [a] habeas corpus claim." Yeboah-Sefah v. Ficco, 556 F.3d 53, 75 (1st Cir. 2009).  This court examines the Strickland issue de novo with respect to the speedy trial claim, as the state courts did not rule on whether trial counsels' performances were constitutionally ineffective for failing to preserve a speedy trial claim.

To demonstrate that she was denied the effective assistance of counsel to which the Sixth Amendment entitled her, Tompson "must show both that [her] 'counsel's representation fell below an objective standard of reasonableness' (the performance prong), and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' (the prejudice prong)." Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018) (quoting Strickland, 466 U.S. at 688).  "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).

Tompson's attempt to use ineffective assistance of counsel to establish cause for her procedural default founders on the performance prong of Strickland.

> With respect to the performance prong, we inquire "whether counsel's assistance was reasonable considering all of the circumstances," [Strickland, 466 U.S. at] 688, evaluating the attorney's conduct "from counsel's perspective at the time" and in light of "prevailing professional norms," id. at 688-89. Because there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 689, the performance of trial counsel is deficient "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it."

Rivera, 879 F.3d at 12 (internal quotation marks and citation omitted). Neither Attorney Malfitani nor Attorney Fleming made a decision "that no competent attorney would have made," id., by declining to file a motion to dismiss that invoked Tompson's right to a speedy trial.

"The Sixth Amendment to the United States Constitution . . . protects a defendant's interest in having a speedy trial." United States v. Irizarry-Colón, 848 F.3d 61, 67 (1st Cir. 2017). "[T]he speedy-trial right attaches when a defendant is indicted, arrested, or otherwise officially accused." Butler v. Mitchell, 815 F.3d 87, 90 (1st Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 1064 (2017); see also State v. Brooks, 162 N.H. 570, 581 (2011). To "trigger a speedy trial analysis," under either the Sixth Amendment or the State Constitution, an

accused must allege that the interval between accusation and
trial "has crossed the threshold dividing ordinary from
'presumptively prejudicial' delay." Doggett v. United States,
505 U.S. 647, 651-52 (1992) (quoting Barker, 407 U.S. at 530-
31); see also Brooks, 162 N.H. at 581. Delay of "'around one
year'" is considered presumptively prejudicial under federal
law. Irizarry-Colón, 848 F.3d at 68. Under New Hampshire law,
a pre-trial delay in felony cases becomes presumptively
prejudicial when it lasts nine months from the date of the
indictment or arrest, or when it exceeds six months in
misdemeanor cases in which the defendant is not incarcerated.
See State v. Allen, 150 N.H. 290, 294, 837 A.2d 324, 328 (2003);
State v. Fletcher, 135 N.H. 605, 607 (1992); Richard B.
McNamara, N.H. Practice, 2 Crim. Prac. & Proc. § 26.10 & n.2
(5th ed. Matthew Bender). Once the delay exceeds the point of
presumptive prejudice, courts assess four factors when
considering whether a criminal defendant has been deprived of
her right to a speedy trial, including "[l]ength of delay, the
reason for the delay, the defendant's assertion of his right,
and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514,
530 (1972); see also Brooks, 162 N.H. at 581 (same test applies
under State Constitution).

In this case, Tompson's speedy-trial right attached when
she was arrested on November 14, 2011. February 14, 2012 -- the

scheduled date of her initial misdemeanor/violation trial -- was just three months after Tompson was arrested. While the prosecutor's action in nol prossing the charges denied Tompson a trial on that date, Tompson did not have a right to a trial on that date, and nothing the prosecutor did violated her right to a speedy trial on that date.

Even if the court adopts the theory advanced in the unfiled draft motion to dismiss, the nol prossing of the violation-level and Class B misdemeanor charges in February 2012, and the ensuing indictment and filing of Class A misdemeanor charges in March 2012, only pushed her trial out to the August 13, 2012 trial period. August 13 is one day short of the nine-month trigger in New Hampshire for potentially viable speedy trial claims involving felony cases, if the delay were measured continuously from the date of arrest; and August 12 is twenty-five days short of that nine-month trigger, excluding the period of time when no charges were pending against Tompson. See Allen, 150 N.H. at 293 ("when the State enters a nolle prosequi in good faith and later recharges a defendant, we do not include the time between the nolle prosequi and the refiling for speedy trial analysis")[4]; see also Irizarry-Colón, 848 F.3d at 65.

_____

[4]Tompson has not demonstrated any bad faith on the prosecutor's part in her state case, relating to the nol prossing of the original charges. Cf. United States v. Goodwin, 457 U.S. 368, 380 (1982) (prosecutor may dismiss misdemeanors

Nothing in this court's record suggests that Tompson was actually prejudiced by any pretrial delay, and neither the length of the delay at that point (less than nine months), nor the reasons for that delay (including the time needed to transfer the case to Superior Court and obtain indictments) would have weighed heavily in Tompson's favor in a speedy trial analysis. Under such circumstances, a motion to dismiss the charges would have failed. Accordingly, Attorney Malfitani did not provide ineffective assistance by declining to file a motion asserting a violation of Tompson's speedy-trial rights prior to July 19, 2012, the last day of his involvement in the case.

When Tompson sought new counsel, and the Public Defender withdrew on July 19, 2012, Tompson acknowledged, and then waived, her speedy-trial right. Attorney Fleming was appointed to represent Tompson shortly thereafter, and he represented her through her trial, which began on March 11, 2013, approximately

---

and re-indict on felonies without giving rise to presumption of vindictiveness); Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (prosecutor may threaten to charge defendant with more serious crime to induce acceptance of plea deal). Deputy Peltier was not in the courthouse on the scheduled trial date, and the prosecutor had just learned that Tompson would not accept the plea bargain he offered, when the charges were nol prossed. Nothing in the record suggests that the prosecutor's actions were intended "to inflict confusion, harassment, or other unfair prejudice," warranting any court intervention to curb his broad discretion to nol pros the charges. State v. Allen, 150 N.H. 290, 293 (2003).

sixteen months after she was arrested. The record makes clear, however, that Tompson again waived her right to a speedy trial in November 2012. There was never a compelling speedy-trial claim for Attorney Fleming to make on Tompson's behalf.

Thus, neither Attorney Malfitani nor Attorney Fleming provided constitutionally ineffective assistance that would help excuse Tompson's procedural default by satisfying the cause prong of the cause and prejudice analysis. Because Tompson's speedy-trial claim was procedurally defaulted, and she has not established cause and prejudice for the default, respondent is entitled to judgment as a matter of law on Claim 1.

## II.  **Excessive Force**

In Claim 5, Tompson asserts that her convictions violated her rights under the Fourth and Fourteenth Amendments because Deputy Peltier used excessive force to arrest her. "Although '[t]he Fourth Amendment prohibits the use of excessive force by arresting and investigating officers,'" a petitioner's claim that "police officers severely beat him during his arrest does not implicate the validity of his conviction or the duration of his state-court sentence." Anderson v. Perry, No. 15-CV-10239, 2018 WL 500246, at *5, 2018 U.S. Dist. LEXIS 9505, at *12 (E.D. Mich. Jan. 22, 2018) (citations omitted). As such, the petitioner's excessive force claims are not cognizable grounds upon which relief can be granted in this action. See id.; see

also <u>Mills v. Lempke</u>, No. 11-CV-0440(MAT), 2013 U.S. Dist. LEXIS 14960, at *18, *126-*127, 2013 WL 435477, at *7, *45 (W.D.N.Y. Feb. 4, 2013); <u>Nelson v. Thaler</u>, No. 3:06-CV-1562-M (BH), 2010 U.S. Dist. LEXIS 116875, at *26, 2010 WL 4629988, at *9 (N.D. Tex. July 31, 2010) (petitioner's "excessive force claims" are precluded under <u>Stone v. Powell</u>, 428 U.S. 465, 482 (1976)), <u>R&R approved</u>, 2010 U.S. Dist. LEXIS 116872, 2010 WL 4627717 (N.D. Tex. Nov. 2, 2010). Accordingly, as to Claim 5, respondent is entitled to judgment as a matter of law.

## III. <u>Ineffective Assistance of Counsel</u>

Tompson claims that each of her three trial attorneys provided her with ineffective assistance, in violation of her rights under the Sixth Amendment. Tompson raised claims of ineffective assistance of trial counsel in her initial motion for a new trial filed in the RCSC, which that court denied in the May 2014 RCSC Order. The lack of an express finding regarding the prejudice prong of <u>Strickland</u> in that order, and the state court's explicit reference to counsel's diligence, draws into question whether that court applied a standard that is inconsistent with <u>Strickland</u> in ruling on the ineffective assistance of counsel claims before it. In an abundance of caution, this court subjects each of petitioner's ineffective assistance of counsel claims to <u>de novo</u> consideration.

A.   <u>Strickland Standard</u>

To prevail on a <u>Strickland</u> claim, a habeas petitioner "must show both that [her] counsel's representation fell below an objective standard of reasonableness . . . and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Rivera</u>, <u>879 F.3d at 12</u> (quotation marks omitted).  With respect to the prejudice prong, the probability of a different result "must be substantial, not just conceivable," <u>Rivera-Rivera v. United States</u>, <u>827 F.3d 184, 187 (1st Cir. 2016)</u>, <u>cert. denied</u>, <u>137 S. Ct. 696 (2017)</u>, and be "sufficient to undermine confidence in the outcome," <u>Harrington</u>, <u>562 U.S. at 104</u>.

B.   <u>Attorney Malfitani</u>

Attorney Malfitani represented Tompson from March 14, 2012, until July 19, 2012, when the RCSC allowed the Public Defender to withdraw.  In Claim 2, Tompson asserts that Attorney Malfitani provided ineffective assistance by failing to: (1) file a motion to dismiss for lack of a speedy trial; and (2) move to object to the lesser charge of reckless conduct.

The court has already determined that Attorney Malfitani did not provide ineffective assistance by failing to file a motion to dismiss for lack of a speedy trial.  Accordingly, Tompson's claim to that extent is unavailing.

Tompson also asserts that Attorney Malfitani provided her with ineffective assistance by failing to "object" to the charge of misdemeanor reckless conduct on which she was convicted. In the Motion for a New Trial Due to Ineffective Assistance of Counsel that Tompson filed in the RCSC, see Doc. No. 19-8, she framed that claim as follows:

> Most prejudicial, Attorney Malfitani failed to file a Motion to Object to the Lesser Charges imposed in this case. Attorney Malfitani's inaction allowed the State to prosecute Defendant "to the full extent of the law" without argument or opposition. This attorney incompetence was damaging and prejudicial to Defendant's case. . . . In this case, all lesser charges made against Defendant were tried by the prosecution.

Assuming without deciding that Tompson's § 2254 claim relating to that misdemeanor conviction has remained cognizable notwithstanding the discharge of her sentence on that charge,[5] the court finds that Tompson has failed to satisfy the performance prong of her Strickland claim. While Tompson criticizes Attorney Malfitani for failing to "object" to the misdemeanor charge, she does not indicate when or how Attorney Malfitani should have objected. The jury instructions regarding the lesser included offense were delivered long after Attorney Malfitani had withdrawn from the case. Tompson has failed to

---

[5]The stand-committed sentence that Tompson received for misdemeanor reckless conduct ran concurrently with the sentence she received for felony reckless conduct.

show that Attorney Malfitani performed in an unreasonable manner by failing to file a motion seeking to avoid the possibility of a lesser-included charge while he remained Tompson's counsel. Accordingly, as to Claim 2, respondent is entitled to judgment as a matter of law.

C.    Attorney Fleming

Attorney Fleming represented Tompson from July 23, 2012, until May 10, 2013, when the RCSC allowed him to withdraw.  In Claim 3, Tompson asserts that Attorney Fleming provided ineffective assistance by: (1) failing to file a motion to dismiss for lack of a speedy trial; (2) failing to move to object to the lesser charge of reckless conduct; (3) failing to effectively cross examine the State's witness, Deputy Peltier, regarding his character, history, and behavior; (4) failing to raise the brutality of the arresting officer as a defense or mitigating factor at trial; (5) making disparaging remarks about her during his opening statement and closing argument; (6) failing to prepare for trial; and (7) failing to prepare her to testify.  The court considers each basis for Claim 3 in turn.

1.    **Speedy-trial Motion**

Tompson claims that Attorney Fleming provided ineffective assistance by failing to file a speedy-trial motion.  That claim fails for reasons that the court has already explained.

### 2. Lesser Included Charge

Tompson claims that Attorney Fleming provided ineffective assistance by failing to object to the misdemeanor reckless conduct charge on which she was convicted. As it is well established in New Hampshire law "that, upon request, the prosecution is entitled to have a lesser-included offense considered over the objection of the defense if the evidence justifies it," In re Nathan L., 146 N.H. 614, 617 (2001), Tompson has failed to rebut the strong presumption that declining to object to a lesser-included-offense instruction fell "within the wide range of reasonable professional assistance," Rivera, 879 F.3d at 12.

Furthermore, Attorney Fleming moved to dismiss the felony level reckless conduct charges at the close of the state's case and renewed that motion before the case was submitted to the jury. Those motions were denied, and the NHSC upheld those rulings in Tompson's Direct Appeal. Petitioner has not shown how a motion objecting specifically to a lesser-included charge could have fared differently, in a manner that could give rise to any reasonable probability of a different outcome. Accordingly, as to this portion of Claim 3, respondent is entitled to judgment as a matter of law.

### 3. Cross-Examination of Deputy Peltier

Tompson claims that Attorney Fleming provided ineffective assistance by failing to adequately cross examine Deputy Peltier. Tompson asserts that Attorney Fleming did not inquire sufficiently into Deputy Peltier's family background (namely, that he came from a police family), alleged history of reckless driving and forceful arrests in his prior employment, and his alleged "character" flaws. Tompson asserts such inquiries would have provided evidence to support that his interactions with her were brutal and authoritarian.

Contrary to Tompson's contentions, however, Attorney Fleming meaningfully cross examined Peltier in a manner that elicited testimony regarding his behavior, his "aggressive" initial contact with her (slamming her trunk with his hand), and the force he used in tackling and arresting her. Peltier admitted he was angry with Tompson, and that she appeared to be fearful of him. The scope of those inquiries falls within the range of adequate representation.

Furthermore, Attorney Fleming pursued a defense strategy that was not dependent on any of the areas of inquiry proposed by Tompson. In both his opening statement and closing argument, he characterized the state's case as seeking to make a "mountain out of a molehill." Mar. 12, 2013 Tr., Criminal Case, v.1, 11:24; Mar. 13, 2013 T., Criminal Case, v.2, 236:2-3. That

theory was grounded in the evidence, including the testimony of Deputy Peltier elicited in the cross examination. Tompson has not shown how further inquiries into Deputy Peltier's behavior, his alleged character flaws, family background, and work history would have given rise to a reasonable probability of a different outcome. Tompson's argument challenging the scope of cross examination of Deputy Peltier thus fails on both prongs of Strickland. Accordingly, the court grants judgment as a matter of law on this aspect of Claim 3.

### 4. Police Brutality

Tompson claims that Attorney Fleming provided ineffective assistance by failing to "address" Deputy Peltier's purported brutality as a mitigating factor or defense to the charges against her. The alleged excessive force at issue occurred in connection with the arrest and not before. Accordingly, to the extent Tompson argues that a defense theory emphasizing and introducing additional evidence as to the brutality of the arrest would have had any reasonable probability of altering the outcome as to the remaining charges based on her prior conduct, that argument is unavailing.

Particularly in this case where felony reckless conduct charges were paired with misdemeanors, including the resisting arrest charge, a strategy of avoiding an emphasis on the forceful nature of the arrest falls within the range of

reasonably competent representation.  Here, Attorney Fleming's
defense theory was that the state, by charging felonies, was
making a mountain out of a molehill.  Drawing the jury's
attention to the force used in the arrest could have undermined
the molehill theory, by leading the jury to consider whether
Deputy Peltier reasonably believed the force needed to subdue a
dangerous person was necessary to control Tompson under the
circumstances.

Furthermore, the jury had before it both Deputy Peltier's
testimony, as well as Tompson's testimony, regarding the arrest
and the pain she felt.[6]  See id. at 3-4.  Nothing before the
court suggests that Attorney Fleming in any way prevented the
jury from taking that evidence into account, by failing to
address the arrest to the degree to which Tompson claims she was
entitled.  Tompson has not demonstrated that any further actions

_____

[6]Tompson described the arrest on direct as follows:

[Deputy Peltier] came flying at me from the left, and he
jumped me.  I landed down on my left-hand side, and my left
arm was stuck underneath me with the pocketbook, and my
right arm went flying out in front of me.  He rammed his
right knee in the upper back, and then he took my hair.  He
was wearing -- I was wearing this, and he grabbed my hair
and slammed my head into the ground twice, and I was -- I
was screaming.  I mean I immediately started screaming
uncontrollably, and I'm shaking.

Mar. 12, 2013 Tr., v.1, Criminal Case, 152:12-19.  She further
testified that she was screaming and "hysterical" because of the
pain and shock she experienced.  See id., 154:2-8.

by counsel to address the forceful arrest would have given rise
to a reasonable probability of a different outcome in her case.
Accordingly, as to this part of Claim 3, respondent is entitled
to judgment as a matter of law.

### 5.  Disparaging Remarks

Tompson claims that Attorney Fleming provided ineffective
assistance by making disparaging remarks about her in his
opening statement and closing argument.  The court has reviewed
the pertinent transcripts.  On a few occasions, in contexts
related to counsel's theory of the case, Attorney Fleming
commented on Tompson's age (48), disabled status, and quiet,
sheltered, life living alone.  While counsel also commented in
his opening statement that Tompson's decision to drive away when
an officer pounded on her car truck, perhaps in a manner
different from what a "normal citizen" might do, Mar. 12, 2013
Tr., Criminal Case, v.1, 18:7-8, he did so in the context of
explaining that the evidence would show that her actions
resulted from her fear of this officer and her inexperience with
police encounters.  Similarly, in his closing, Attorney Fleming
characterized Tompson as "not having had much of a life and
[sic] -- in terms of interaction with police officers or public
events, or those kinds of things, criminal activity."  Mar. 13,
2013 T., Criminal Case, v.2, 234:22-25, 235:1.  Counsel's
remarks were consistent with the defense theory, which sought to

depict Tompson's conduct as the product of inexperience, fear, and confusion, to dispel an inference that her conduct had been reckless, or willfully, knowingly, or purposefully evasive. Attorney Fleming's opening statement and closing argument in all respects fell "within the wide range of reasonable professional assistance," Rivera, 879 F.3d at 12. Judgment as a matter of law is proper on this portion of Claim 3.

### 6. Preparation for Trial

Tompson claims that Attorney Fleming provided ineffective assistance by failing to adequately prepare for trial. This claim is undeveloped in Tompson's petition and in her objection to the motion for summary judgment, and to that extent, she has failed to satisfy the prejudice prong of Strickland.

In her state-court filings, see Doc. No. 22-3, Tompson highlighted, among other things, Attorney Fleming's failure to interview her neighbors and the Salem police officers who assisted in her arrest. As to the failure to interview neighbors, Tompson notes that Attorney Fleming's investigator knocked on doors for two hours in an unsuccessful attempt to find witnesses. Attorney Fleming's failure to undertake further efforts to find neighbors who witnessed the events at issue did not constitute ineffective assistance, under the circumstances, where nothing in the record suggests that any neighbors witnessed the events in question. Her claim that she was

prejudiced by counsel's failure to undertake further efforts to identify witnesses is wholly speculative.  See Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010).

As to the failure to interview the police officers, Attorney Fleming's decision had a tactical dimension.  He explained that police officers tend to "back each other," when he explained why he would not interview them.  The testimony Tompson argues they could have provided, namely, evidence of her demeanor and affect both during and after the arrest, and the force used in arresting and handcuffing her, is largely cumulative of testimony the jury heard, and had no apparent relevance to the charges based on her prior conduct.  For reasons explained with respect to the failure to address the "brutality" of the arrest, the officers' testimony as to the arrest could have backfired given counsel's "molehill" theory of the case.  Under such circumstances, the decision not to interview them was not ineffective assistance.

Tompson has thus failed to satisfy the Strickland standard with respect to her failure to investigate claim.  Respondent is entitled to judgment as a matter of law with respect to this aspect of Claim 3.

### 7.  **Preparation for Testimony**

Tompson claims that Attorney Fleming provided ineffective assistance by failing to adequately prepare her to testify.

This claim is undeveloped in Tompson's petition and in her objection to the motion for summary judgment. Petitioner has failed to establish the prejudice prong of Strickland by failing to show a reasonable probability that the outcome of her trial would have been different if she had been prepared in a different manner. Accordingly, the motion for summary judgment is properly granted on this part of Claim 3.

    D.   Attorney Reardon

Attorney Reardon represented Tompson at her sentencing hearing. In Claim 4, Tompson asserts that Attorney Reardon provided ineffective assistance by failing to: (1) file any motions regarding an appropriate sentence; or (2) object to the prosecution's sentencing recommendations.

With respect to the first portion of Claim 4, Tompson is correct in her factual assertion, i.e., that Attorney Reardon did not file a written objection to the prosecutor's sentencing recommendation. The record shows, however, that Attorney Reardon made a pertinent oral presentation in the sentencing hearing, objecting to the State's recommended sentence and proposing alternatives. Tompson has not stated what information Attorney Reardon should have presented in a written filing that he did not effectively make orally. Accordingly, Tompson has not shown, that: (1) Attorney Reardon's decision not to file a written objection was "so patently unreasonable that no

competent attorney would have made it," Rivera, 879 F.3d at 12; or (2) there is a reasonable probability that she would have received a more lenient sentence if Attorney Reardon had filed a written objection, rather than merely articulating objections orally, at the sentencing hearing.  As the first portion of Claim 4, therefore, respondent is entitled to judgment as a matter of law.

The second portion of Claim 4 is based upon Tompson's assertion that Attorney Reardon did not object at all to the prosecution's sentencing recommendations.  The transcript does not support Tompson's claim, as it records Attorney Reardon's objections, including the following: (1) "we obviously disagree with what the State has proposed," June 19, 2013 Sentencing Tr., Criminal Case, at 14:21-22; (2) "jail . . . is highly inappropriate for this lady," id. at 13:17-18; (3) "committed time is inappropriate," id. at 14:24; (4) "Judith does disagree with any kind of mental health assessment," id. at 15:2-3; and (5) "I don't want a heavy fine, because [Tompson] has limited income," id. at 15:8-10.  Further, Attorney Reardon's advocacy for a lesser sentence than that which the prosecutor proposed would have been reasonably understood by the sentencing judge as being rendered in opposition to the prosecutor's recommended sentence.

Because the second portion of Claim 4 is based upon a factual premise not supported by the record, that part of Claim 4 is unavailing. Respondent is entitled to judgment as a matter of law on Claim 4.

## Conclusion

For the reasons described above, respondent's motion for summary judgment (Doc. No. 38) is granted in its entirety, and Tompson's § 2254 petition is denied. Furthermore, the court declines to issue a certificate of appealability, because Tompson has neither (1) shown that reasonable jurists could debate whether her petition should have been resolved in a different manner; nor (2) shown that the issues presented were adequate to deserve encouragement to proceed further; nor (3) otherwise made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
United States District Court
Chief Judge

March 30, 2018

cc:  Judith Tompson, pro se
     Elizabeth C. Woodcock, Esq.